# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

**FILED**

Jul 17 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

Douglas Jae Woo Kim

DEFENDANT(S).

# SECOND SUPERSEDING INDICTMENT

18 U.S.C. § 1343 – Wire Fraud;
18 U.S.C. § 1956(a)(2)(A) –
International Laundering of Monetary Instruments;
18 U.S.C. § 1957 – Money Laundering;
18 U.S.C. §§ 981(a)(1)(C), 982, & 28 U.S.C. § 2461(c) – Criminal Forfeiture

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 16th day of

July.

Rose Maher, electronic signature

Clerk

Bail, $ No Process

Hon. Thomas Hixson, U.S. Magistrate Judge

**FILED**

Jul 17 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>DOUGLAS JAE WOO KIM,<br><br>          Defendant. | CASE NO. CR 21-0164 CRB<br><br>VIOLATIONS:<br>18 U.S.C. § 1343 – Wire Fraud;<br>18 U.S.C. § 1956(a)(2)(A) –<br>International Laundering of Monetary Instruments;<br>18 U.S.C. § 1957 – Money Laundering;<br>18 U.S.C. §§ 981(a)(1)(C), 982, & 28 U.S.C. §<br>2461(c) – Criminal Forfeiture |

S E C O N D   S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Second Superseding Indictment:

The Defendant

1.      Douglas Jae Woo KIM was an individual residing in the Northern District of California and elsewhere.

Relevant Entities

2.      Virtual Currency Exchange ("VCE") 1 was a virtual currency exchange platform based in Seattle, Washington.

3.      VCE 2 was a virtual currency exchange platform based in New York, New York.

4.      VCE 3 was a virtual currency exchange platform based outside of the United States.

5.      VCE 4 was a virtual currency exchange platform based in San Francisco, California.

6.      VCE 5 was a virtual currency exchange platform based in San Francisco, California.

7.      Gambling Site 1 was an online gambling website that accepts cryptocurrency based and operated outside of the United States.

8.      Gambling Site 2 was an online gambling website that accepts cryptocurrency based and operated outside of the United States.

Background Regarding Virtual Currencies

9.      Virtual currencies are digital representations of value that are transacted through online networks or the Internet and are not backed by a government.  Bitcoin ("BTC") and Ether ("ETH") are two of the most commonly known virtual currencies.

10.     Virtual currency addresses are specific virtual locations to which such currencies are sent and received.  A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.  Each virtual currency address is controlled using a unique corresponding private key, a cryptographic equivalent of a password needed to access the address.  Only the holder of an address's private key can authorize a transfer of virtual currency from that address to another address.

11.     A virtual currency wallet is a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and private keys.  It also allows users to send and receive virtual currencies.  Multiple addresses can be stored in a wallet.

12.     A Virtual Currency Exchange ("VCE") is a business that allows customers to buy, sell, or trade virtual currency.  Many VCEs also store virtual currency on behalf of their customers in wallets accessible by customers but controlled by the VCE.

13.     VCEs 1, 2, 3, 4, and 5 are exchanges that offer their users the ability to trade virtual currencies via the Internet.  Users of VCEs 1, 2, 3, 4, and 5 can access their accounts via the Internet with their email address or a user identification and a unique password, and through access to those accounts, can store, access, move, or trade virtual currency.

14.     Bitcoin ("BTC") is a form of decentralized, convertible virtual currency that exists on a blockchain.  The currency is not issued by any government, bank, or company, but rather is generated

and controlled through computer software operating via a decentralized network.  BTC is typically acquired by purchasing it from a virtual currency exchange.  The BTC blockchain is a public transaction ledger that includes a record of every BTC transaction that has ever occurred.

15.    Ether ("ETH") is a virtual currency that is open source, public, has a blockchain, and is distributed on a platform that uses "smart contract" technology.  Smart contracts are computer protocols that automatically execute according to the terms of the contract written into the lines of code within the computer protocols.  These protocols are also sometimes called self-executing contracts.  The contract transaction on the Ethereum blockchain is both traceable and irreversible.

16.    Tether ("USDT") is a stablecoin, a type of cryptocurrency that aims to keep the price of their tokens stable, most commonly by tying it to the price of a traditional currency like the U.S. dollar, with the aim of reducing or eliminating the volatility and fluctuations of the price of virtual currency.

<u>KIM'S SCHEME TO DEFRAUD</u>

17.    Beginning in or around October 2017 and continuing until at least in or around October 2020, KIM executed a scheme to defraud individuals.  To obtain money or property for his own use, KIM defrauded victims, in part, by representing to them that he would trade or invest cryptocurrency provided by the individuals to make a profit, and by concealing the fact that KIM used the funds he obtained to gamble in online platforms or to pay back others who had previously loaned KIM cryptocurrency or U.S. Dollars.

18.    As part of the scheme to defraud, KIM made it appear, falsely, that he was a legitimate cryptocurrency trader seeking short-term liquidity in the form of loans or investments for cryptocurrency trading or other legitimate business purposes when, in fact, he largely transferred the funds he received to offshore, online gamble sites.

19.    Also as part of the scheme to defraud, KIM told victims that the loans carried no risk or very low risk and promised his victims high rates of return on their loans.  KIM represented to victims that he possessed sufficient funds to personally guarantee the loans.  After convincing his victims that the money or cryptocurrency they provided to him would be used for business purposes or to trade or invest cryptocurrency, KIM's victims would either transfer cryptocurrency to a cryptocurrency wallet provided by and controlled by KIM, or would wire U.S. dollars to a bank account provided to them by

KIM and controlled by KIM.  KIM appropriated these assets for his own personal use, including by repeatedly exchanging investments he received in U.S. dollars into cryptocurrency, and then transferring all or a portion of the cryptocurrency assets he obtained to online gambling sites operating outside the United States.

20.     At various times throughout the scheme, KIM also used the money or cryptocurrency he obtained from his victims to pay back earlier victims who had previously made investments, in a manner that was consistent with a classic Ponzi scheme.  For example, on or about March 2, 2018, KIM used funds received pursuant to a loan from an individual, J.K., to pay back another individual, A.B., who had previously loaned cryptocurrency to KIM.  Then, on or about March 10, 2018, KIM used funds loaned to him by yet another individual, C.R., to pay back the loan made to him approximately one week earlier by J.K.

21.     Having devised and intending to devise this scheme and artifice to defraud, and to obtain money and property from investors by means of false and fraudulent pretenses, representations, and promises, KIM transmitted and caused to be transmitted, by means of wire and interstate and foreign commerce, writings and other signs, signals, pictures, and sounds, for the purpose of executing the scheme and artifice to defraud as further alleged herein.  These wire transmissions include wire transfers of funds between U.S. banks, text messages sent through mobile telephone networks, email communications, and electronic access to VCE accounts via the Internet.

<u>KIM'S CONTINUED SCHEME TO DEFRAUD</u>

22.     After being charged in this case, KIM continued the scheme to defraud, obtaining money or property from individuals by making similar false representations. Beginning no later than approximately June 2023 and continuing until at least in or around April 2024, KIM continued his scheme to defraud individuals by lying about his background and experience, his financial condition, and his investment and cryptocurrency trading activities and planned activities in order to obtain loans and investments, which he then used, in many cases, to bet on sports or pay back others who had previously loaned KIM cryptocurrency or U.S. Dollars.

23.     As part of the continued scheme to defraud, KIM made it appear, falsely, to some of his victims that he was a legitimate cryptocurrency trader seeking short-term liquidity in the form of loans

1    or investments for cryptocurrency trading, including for speculating in certain tokens, arbitrage trading,

2    and purchasing portfolios of digital assets at discounts to resell at full price. To another victim, Kim

3    made it appear, falsely, that he was a sophisticated and successful traditional investor, that he had only

4    limited experience with cryptocurrency.

5         24.    Kim made false representations about his personal financial condition to victims to

6    convince them that KIM could repay the short-term loans, including sending forged or false screenshots

7    of account balances that substantially overrepresented Kim's actual account balances and assets. Kim's

8    statements to victims about himself and the risk profile of the loans he requested were also misleading

9    because Kim omitted, and the victims did not know, that Kim was under federal indictment for obtaining

10    loans of money and cryptocurrency through fraud and false statements and that Kim was in substantial

11    debt to these prior lenders.

12         25.    To induce victims to loan him additional money, Kim made numerous false

13    representations about the status of his repayment of prior loans, including by sending false or forged

14    screenshots of purported wire transfers that did not exist.

15         26.    Contrary to his representations about how he would use the loan proceeds, Kim sent

16    victims' funds to Gambling Site 2 and used funds to pay back prior lenders.

17         27.    The false statements and misrepresentations Kim made to victims during his continued

18    fraud scheme were important to the victims' decisions to loan money to Kim. Through the false

19    statements and omissions, Kim obtained at least 65 ETH and $150,000 from at least four victims during

20    his renewed fraud scheme, including victims known to the Grand Jury as G.B., N.K., and W.H.

21         28.    For example, beginning in approximately September 2023, KIM began soliciting loans

22    from an individual, G.B. KIM falsely portrayed himself to G.B. as a savvy traditional investor with

23    limited knowledge of cryptocurrency, concealing the fact that he was under federal indictment for a

24    cryptocurrency related fraud scheme. KIM told G.B. that the loans were risk free, in part, because KIM

25    would personally guarantee the loans. KIM misrepresented his assets to G.B., including making

26    statements representing that he had substantial non-cryptocurrency assets, and concealing substantial

27    debts he owed to prior lenders. KIM also falsely stated that the loan proceeds would be used for low-

28    risk cryptocurrency investments and/or trading strategies. G.B. loaned KIM ETH, BTC, and U.S.

Currency based on the false information KIM provided.  When KIM failed to repay loans on time, KIM made numerous false statements to G.B. about the reasons for the failure, and falsely claimed that he had initiated repayments.  The false and misleading statements KIM made to G.B. to obtain money and cryptocurrency from G.B. were important to G.B.'s decision to part with his money and cryptocurrency.

29.     In or about November 2023, KIM sent an email to an individual he had gone to middle school with, portraying himself as a sophisticated cryptocurrency trader and requesting a loan to speculate in the cryptocurrency space.  The individual connected KIM with an individual, N.K.  KIM falsely told N.K. KIM intended to invest in a cryptocurrency token, known as ATOR.  KIM concealed the fact that he was under federal indictment for allegations that he had fraudulently obtained cryptocurrency loans from numerous victims.  KIM also concealed that he owed substantial debts to prior lenders, including G.B. who was actively attempting to obtain repayment from KIM.  N.K. lent KIM $50,000 and KIM falsely claimed to have invested in ATOR.  In reality, KIM bought BTC with a substantial portion of the loan proceeds that he transferred to Gambling Site 2 to bet on sports.  KIM made numerous additional false statements to N.K. to obtain two additional loans, totaling $70,000, from N.K., including sending N.K. a forged screenshot purporting to show that a wire was in process to repay one of N.K.'s loans to KIM, when KIM had initiated no such wire and KIM's account did not include sufficient funds to send such a wire.  The false and misleading statements KIM made to N.K. to obtain money from N.K. were important to N.K.'s decision to part with his money.

30.     In approximately January 2024, KIM began soliciting loans of ETH from an individual, W.H.  KIM made numerous false and misleading statements to W.H. and provided other false information which caused W.H. to loan ETH worth over $160,000 to KIM.  KIM provided W.H. false information and falsely claimed that he had sufficient assets to easily repay the loans.  KIM sent W.H. forged screenshots of KIM's brokerage accounts, showing assets of approximately $900,000, when at the time, in reality, KIM had less than $20 dollars in his accounts.  Prior to one loan, KIM sent N.K. a $100,000 check from one of these brokerage accounts for N.K. to hold as collateral.  KIM also concealed that he owed substantial debts to prior victims that he had defrauded and that he was under federal indictment for allegations that he had fraudulently obtained cryptocurrency loans from numerous victims.  KIM also showed W.H. false or forged documents purporting to show a transfer from a

cryptocurrency account controlled by KIM to W.H.  The false and misleading statements KIM made to

W.H. to obtain cryptocurrency from W.H. were important to W.H's decision to part with his

cryptocurrency.

COUNTS ONE THROUGH SEVEN: (18 U.S.C. § 1343 –Wire Fraud)

31.    Paragraphs 1 through 30 of this Second Superseding Indictment are re-alleged and

incorporated as if fully set forth here.

32.    From in or about October 2017 and continuing until at least in or about October 2020,

and then continuing from in or about June 2023 and continuing until at least in or about April 2024, in

the Northern District of California and elsewhere, the defendant,

DOUGLAS JAE WOO KIM,

knowingly and with the intent to defraud participated in, devised, and intended to devise a scheme and

artifice to defraud as to a material matter, and to obtain money and property by means of materially false

and fraudulent pretenses, representations, and promises, and by means of omission and concealment of

material facts, and, for the purpose of executing such scheme and artifice to defraud and attempting to

do so, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means

of a wire communication, certain writings, signs, signals, pictures, and sounds, on or about the dates and

as described below, each wire being a separate count:

| Count | Date | Description |
|-------|------|-------------|
| 1 | May 30, 2018 | Electronic message from KIM to individual, J.K., confirming a cryptocurrency address for a proposed loan of cryptocurrency. |
| 2 | October 23, 2018 | Wire transfer of $20,000 by an individual, J.S., from a J.P. Morgan Chase bank account to KIM's Bank of America account ending 0203 held in the Northern District of California. |
| 3 | May 21, 2019 | Electronic message from KIM to an individual, J.K., confirming transactions for BTC and USDT, which KIM received in two cryptocurrency wallet addresses, one starting with "15N8Wa" (BTC) and one starting with "3Q2vRE" (USDT). |
| 4 | June 20, 2019 | Wire transfer of $30,000 by an individual, D.W., from a J.P. Morgan Chase bank account to a Bank of America bank account ending 0203 belonging to KIM held in the Northern District of California. |
| 5 | June 27, 2019 | Wire transfer of $30,000 by an individual J.B., from a Wells Fargo bank account to KIM's Bank of America bank account ending 0203 held in the Northern District of California. |
| 6 | July 12, 2019 | Electronic message from KIM to individuals, C.R. and R.R., confirming receipt of ETH, which KIM received at cryptocurrency wallets starting with "0x1E84" and "0x7d57". |

| 7 | April 21, 2024 | Electronic message from KIM, who was aboard a commercial flight enroute from Los Angeles International Airport that landed at San Francisco International Airport, sent to individual, W.H., who was outside California confirming the size of the loan KIM currently needed from W.H. was 4 ETH. |

All in violation of Title 18, United States Code, Section 1343.

COUNTS EIGHT THROUGH FIFTEEN: (18 U.S.C. §§ 1956(a)(2)(A) and 2 – International Laundering of Monetary Instruments)

33.    Paragraphs 1 through 32 of the Second Superseding Indictment are realleged and incorporated as if fully set forth here.

34.    On or about the dates alleged below, in the Northern District of California and elsewhere, the defendant,

DOUGLAS JAE WOO KIM,

did knowingly transmit and transfer monetary instruments listed in the table below, from or to a place outside the United States, to or from a place inside the United States, with intent to promote the carrying on of the specified unlawful activity of wire fraud in violation of 18 U.S.C. § 1343, and in doing so did conduct the financial transactions listed in the chart below:

| Count | Date | Amount (Approximate) | Description |
|---|---|---|---|
| 8 | December 1, 2017 | Approximately 6.796 BTC | Transfer of BTC received from an individual, T.H., from KIM's VCE 1 account to an account at Gambling Site 1. |
| 9 | March 2, 2018 | Approximately .96 BTC | Transfer of BTC received from an individual, J.K., from KIM's VCE 1 account to an account at Gambling Site 1. |
| 10 | July 16, 2018 | Approximately 3.5 BTC | Transfer of BTC received from an individual, A.B., from KIM's VCE 4 account to an account at Gambling Site 1. |
| 11 | October 23, 2018 | $19,500 | Transfer of funds from KIM's Bank of America account ending 0203 held in the Northern District of California that were received from an individual, J.S., to KIM's VCE 2 account, where the funds were exchanged into BTC and then transferred to KIM's VCE 3 account, and then transferred to an account at Gambling Site 1. |

| 12 | May 21, 2019 | Approximately 6.9 BTC | Transfer of BTC and USDT received from an individual, J.K., from KIM's VCE 4 account to an account at Gambling Site 2 controlled by KIM. |
| 13 | July 12, 2019 | Approximately 23.47 BTC | Transfer of BTC received from an individual, C.R., from KIM's VCE 4 account to an account at Gambling Site 2 controlled by KIM. |
| 14 | October 25, 2020 | Approximately .191 BTC | Transfer of BTC received from an individual, O.S., from cryptocurrency wallets controlled by KIM to an account at Gambling Site 2. |

All in violation of Title 18, United States Code, Section 1956(a)(2)(A).

COUNT FIFTEEN: (18 U.S.C. § 1957 – Laundering of Monetary Instruments)

      35.    Paragraphs 1 through 34 of the Second Superseding Indictment are realleged and incorporated as if fully set forth here.

      36.    On or about June 27, 2019, in the Northern District of California and elsewhere, the defendant,

DOUGLAS JAE WOO KIM,

did knowingly engage in a monetary transaction by, through, and to, a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds in the amount of $30,000.00 from a Bank of America account ending 0203 that belonged to KIM, which was received via loan by an individual, J.B., into an account at VCE 2 controlled by KIM, followed by the transfer of cryptocurrency to an account at Gambling Site 2 controlled by KIM, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of Title 18, United States Code, Section 1957.

COUNT SIXTEEN: (18 U.S.C. § 1957 – Laundering of Monetary Instruments)

      37.    Paragraphs 1 through 36 of the Second Superseding Indictment are realleged and incorporated as if fully set forth here.

      38.    On or about August 16, 2019, in the Northern District of California and elsewhere, the defendant,

DOUGLAS JAE WOO KIM,

did knowingly engage in a monetary transaction by, through, and to, a financial institution, affecting

interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds in the amount of $60,000.00 from a Bank of America account ending 0203 that belonged to KIM, which was received via loan by an individual, L.D., into an account at VCE 2 controlled by KIM, followed by the transfer of cryptocurrency to an account at Gambling Site 2, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of Title 18, United States Code, Section 1957.

COUNT SEVENTEEN: (18 U.S.C. § 1957 – Laundering of Monetary Instruments)

39.    Paragraphs 1 through 38 of the Second Superseding Indictment are realleged and incorporated as if fully set forth here.

40.    On or about June 2, 2020, in the Northern District of California and elsewhere, the defendant,

DOUGLAS JAE WOO KIM,

did knowingly engage in a monetary transaction by, through, and to, a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of funds in the amount of $15,000.00 from a Fidelity account ending 7061 that belonged to KIM, which was received via loan by an individual, M.Y., to a Citibank account ending 4319 owned by an individual, D.X., such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of 18 U.S.C. § 1343, all in violation of Title 18, United States Code, Section 1957.

ADDITIONAL SENTENCING ALLEGATION

[18 U.S.C. § 3147]

41.    At the time that he committed the offense charged in Count 7 of this Second Superseding Indictment, the defendant

DOUGLAS JAE WOO KIM,

was on pretrial release under Title 18, United States Code, Section 3142, pursuant to an order dated July 15, 2020, in this case, pending in the United States District Court for the Northern District of California, which order notified the defendant KIM of the potential effect of committing an offense while on pretrial release.

1   <u>FORFEITURE ALLEGATION</u>: (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)) (Criminal Forfeiture)

2          42.    All of the allegations contained in this Indictment are re-alleged and by this reference

3   fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18,

4   United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

5          43.    Upon a conviction for the offense alleged in Counts One through Seven of this

6   Second Superseding Indictment, the defendant,

7                          DOUGLAS JAE WOO KIM,

8   shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) all

9   property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the

10  result of the violation, including, but not limited to, a forfeiture money judgment.

11         44.    If any of the aforementioned property, as a result of any act or omission of the

12  defendant,

13          a.    cannot be located upon the exercise of due diligence;

14          b.    has been transferred or sold to, or deposited with, a third person;

15          c.    has been placed beyond the jurisdiction of the Court;

16          d.    has been substantially diminished in value; or

17          e.    has been commingled with other property that cannot be divided without difficulty;

18  any and all interest the defendant has in other property shall be vested in the United States and

19  forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

20         45.    Upon conviction of the offenses in Counts Eight through Seventeen of this

21  Second Superseding Indictment, the defendant,

22                         DOUGLAS JAE WOO KIM,

23  shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1),

24  any property, real or personal, involved in a violation of Title 18, United States Code, Section 1956 or

25  any property traceable to such property. The United States will also seek a forfeiture money judgment

26  against each defendant equal to the value of any property, real or personal, involved in these offenses, or

27  property traceable to such property.

28

32.    If any of the property described above, because of any act or omission of the defendant:

      a.   cannot be located upon exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Sections 2323(b) and 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.


DATED:  July 16, 2024                          A TRUE BILL.

                                              /s/
                                      _____
                                      FOREPERSON

ISMAIL J. RAMSEY
United States Attorney

 /s/ Noah Stern
_____
NOAH STERN
MAYA KARWANDE
Assistant United States Attorneys